IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 12-cv-02973-PAB-BNB

ALAN DEATLEY,
NAPI (COLORADO) LLC, a Washington limited liability company,
15 Corporations, Inc., a Washington corporation,

      Plaintiffs,

v.

KEYBANK NATIONAL ASSOCIATION, an Ohio corporation,
COLORADO DEPARTMENT OF REVENUE,
ROXY HUBER,
NEIL TILLQUEST,
BRUCE NELSON,
RICHARD GIARDINI,

      Defendants.

---

**ORDER**

---

      This matter is before the Court on the Motions to Dismiss [Docket Nos. 8, 29]

filed by defendants the Colorado Department of Revenue ("DOR"), Roxy Huber, Neil

Tillquest, Bruce Nelson, and Richard Giardini (collectively the "State defendants"), as

well as the Motion to Dismiss [Docket No. 7] filed by defendant KeyBank National

Association ("KeyBank"). The Court has jurisdiction pursuant to 28 U.S.C. § 1331.[1]

---

[1]The following facts are drawn from plaintiff's Amended Complaint [Docket No. 4] and are taken as true. In addition, pursuant to Fed. R. Evid. 201(b)(2), the Court has taken judicial notice of the October 6, 2010 Denver Grand Jury indictment returned against plaintiff Alan DeAtley, charging plaintiff with several counts of criminal conduct in connection with the State of Colorado's conservation easement tax credit program. Docket No. 29-1; *see GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997) (noting that, if a plaintiff does not "attach a document to its complaint, but the document is referred to in the complaint and is central to the

## I.  BACKGROUND

This case arises out of the sale of income tax credits for conservation easements pursuant to Colo. Rev. Stat. § 39-22-522.  *See* Docket No. 29-1.  In Colorado, a taxpayer is allowed to take a state income tax credit for a qualifying conservation easement created upon real property that is donated to a governmental entity or charitable organization.  Colo. Rev. Stat. § 39-22-522(2).  A conservation easement is a permanent restriction that runs with the land for the purpose of protecting and preserving the land in a predominantly natural, scenic, or open condition.  *See* Colo. Rev. Stat. §§ 38-30.5-101 *et seq*. (establishing the purposes and requirements for conservation easements); *Kowalchik v. Brohl*, 277 P.3d 885, 886 (Colo. App. 2012).

Under the conservation tax credit program, a landowner eligible for an income tax credit may be an individual, a partnership, a corporation, or any other entity.  Colo. Rev. Stat. § 39-22-522(1).  A qualifying landowner has the option of assigning to transferees all or any portion of the tax credit generated by any land donation.  Colo. Rev. Stat. § 39-22-522(7).  The donor landowner, however, may only claim one such tax credit per year.  Colo. Rev. Stat. § 39-22-522(6).

On March 28, 2001, plaintiff Alan DeAtley created NAPI (Colorado), LLC, a Colorado limited liability company registered in the State of Colorado.[2]  Docket No. 8-1

plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss").

[2]According to the complaint, NAPI (Colorado), LLC, merged into a company called NAPI (Colorado), LLC, a limited liability company registered in the State of Washington and a plaintiff in this case.  Docket No. 4 at 8, ¶ 34.  Thus, although both companies have the same name, the plaintiff in this case is the limited liability company registered in the State of Washington.  *Id*.

at 11, ¶¶ 13-14.  Soon after registering in the State of Colorado, NAPI (Colorado), LLC purchased 506 acres of real property located at 2022 Jackson County Road 26, Walden, Colorado (the "Walden property").  *Id*. at 12, ¶ 15.  On May 17, 2004, NAPI (Colorado), LLC subdivided the Walden property into fifteen different lots, which were transferred to fifteen C-corporations[3] – incorporated in either Colorado, Nevada, Washington, or Oregon.[4]  *Id*. at 12-15, ¶¶ 17, 19 (listing the corporations); Docket No. 4 at 7, ¶ 23.  NAPI (Colorado), LLC's land transfers, however, were not registered with the Clerk and Recorders Office for Jackson County, Colorado.  Docket No. 8-1 at 12, ¶ 18.

In connection with these land grants, Mr. DeAtley obtained an unsecured line of credit for $500,000.00 from KeyBank on behalf of Solutions International, LLC, an Oregon limited liability company.  Docket No. 4 at 6, ¶ 12.  Solutions International used the loan for general business expenses.[5]  *Id*. at 2.  On April 26, 2005, KeyBank increased Mr. DeAtley's line of credit from $500,000.00 to $750,000.00.  *Id*. at 2; *id*. at

---

[3]A C-corporation is a corporate entity that is required to pay taxes on the income it earns.  If a C-corporation decides to issue dividends to its shareholders, the shareholders must pay income tax on these dividends.  By contrast, an S-corporation is not taxed at the corporate level.  *In re Northlake Foods, Inc.*, 715 F.3d 1251, 1254 n.2 (11th Cir. 2013).

[4]Plaintiff alleges that NAPI (Colorado), LLC transferred its interest in the Walden property to fifteen C-corporations registered in either the State of Nevada or the State of Washington.  Docket No. 4 at 7, ¶ 22; *id*. at 8, ¶ 33.  The fifteen C-corporations eventually merged into a limited liability company, 15 Corporations, Inc., registered in the State of Washington and a plaintiff in this case.  *Id*. at 8, ¶¶ 35-36.

[5]According to the indictment, Solutions International marketed the state income tax credits from the conservation easements to potential buyers.  Docket No. 8-1 at 16, ¶¶ 35-38.

6, ¶ 15.  Plaintiffs allege that KeyBank increased the line of credit by securing an

interest in the Walden property.  *Id*. at 6-7, ¶¶ 18-20.  Mr. DeAtley asserts that

KeyBank's purported security interest in the Walden property is reflected in the

"Modification and Extension of Promissory Note/Deed of Trust."  *Id*.  Mr. DeAtley,

however, claims that he did not sign the loan documents granting KeyBank a security

interest in the Walden property and disputes that it is his signature on the loan

documents.  *Id*. at 7, ¶¶ 24-27.  Instead, Mr. DeAtley asserts that NAPI (Colorado), LLC

transferred its interest in the Walden property to fifteen C-corporations in exchange for

stock options.  *Id*. at 8, ¶ 32.

Mr. DeAtley alleges that the fifteen C-corporations were formed pursuant to a

Colorado initiative to grant conservation easements, Docket No. 4 at 7, ¶¶ 22-23, and

that plaintiff 15 Corporations, Inc., ("15 Corporations") is the recipient of the Walden

property land grants originally transferred to the fifteen C-corporations.  *Id*. at 8, ¶¶ 35-

36.  Mr. DeAtley claims that, beginning in 2005, he worked with the DOR to develop the

Walden property conservation easement program.  Docket No. 4 at 9, ¶ 40; *id*. at 10, ¶¶

43-44.  Mr. DeAtley also alleges that he has paid millions of dollars in consulting fees to

tax and regulatory experts in connection with the Walden property conservation

easement program.  *Id*. at 11, ¶ 47.  Despite Mr. DeAtley's attempts to comply with the

legal requirements of the easement project, on October 6, 2010, a Denver Grand Jury

returned an indictment, charging Mr. DeAtley with several counts of criminal conduct

related to the Walden property conservation easement program.  *See* Docket No. 29-1.

Specifically, the indictment alleges that Mr. DeAtley and the fifteen C-corporations sold

non-existent income tax credits to various individuals.  *See, e.g.,* Docket No. 8-1 at 19,

¶¶ 58-61.

As a result of the indictment, Mr. DeAtley is currently involved in an ongoing

criminal case,[6] Docket No. 4 at 9, ¶ 39; Docket No. 8-1, as well as consolidated civil tax

cases with the DOR pertaining to the Walden property and the income tax credits.[7]  *See*

Docket No. 8-2.  Moreover, Mr. DeAtley alleges that KeyBank and the State defendants

have initiated foreclosure proceedings against the Walden property.  Docket No. 4 at

13, ¶ 60.

In their amended complaint, plaintiffs assert five claims for relief.  First, plaintiffs

bring a claim for violations of their Fourteenth Amendment due process rights against

all defendants in connection with the foreclosure action against the Walden property.

Docket No. 4 at 12, ¶¶ 58-59; *id.* at 13, ¶¶ 63-64.  Second, plaintiffs assert a claim for

violations of their due process rights and violations of the takings clause against the

State defendants in connection with the foreclosure action against the Walden property.

*Id.* at 14, ¶¶ 67-68.  Third, plaintiffs allege that the individual State defendants violated

their Fourth Amendment right to be free from unreasonable searches and seizures

when the State defendants illegally entered the Walden property in June 2012.  *Id.* at

15-16, ¶¶ 74-79.  Fourth, plaintiffs assert a breach of contract claim against KeyBank in

---

[6]The Colorado Supreme Court has stayed Mr. DeAtley's May 20, 2013 criminal trial to consider whether to allow Mr. DeAtley's criminal counsel to withdraw from the case.  Docket No. 59-1 at 2, ¶ 5; Docket No. 59-2.

[7]The civil proceeding is a consolidated conservation easement tax credit case with the State of Colorado and the Colorado Department of Revenue.  *See* Docket No. 29-2.  On July 12, 2013, Mr. DeAtley notified the Court that these proceedings are ongoing.  *See* Docket No. 59.

connection with KeyBank's loan modification documents.  *Id*. at 16-17, ¶¶ 82-86.

Finally, plaintiffs raise a claim of fraud against KeyBank in connection with the

unsecured loan.[8]  *Id*. at ¶¶ 88-91.  On January 3, 2013, the State defendants filed the

present motion, requesting that the Court dismiss plaintiffs' first three claims asserted

against them pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil

Procedure.[9]  Docket No. 29.

## II.  ANALYSIS

### A.  Eleventh Amendment

Plaintiffs do not clearly indicate whether they assert claims for monetary

damages against the individual State defendants in their official capacities.  *See* Docket

No. 4 at 18, ¶¶ A-B.  However, to the extent they do, the Court will dismiss those claims

without prejudice as barred by the Eleventh Amendment.  *See Will v. Mich. Dep't. of

State Police*, 491 U.S. 58, 71 (1989) (noting that § 1983 did not abrogate the Eleventh

Amendment or provide a jurisdictional basis for suit against a state official acting in his

or her official capacity); *Buchwald v. Univ. of New Mexico Sch. of Med*., 159 F.3d 487,

494-95 n.3 (10th Cir. 1998).

The Court also finds that the injunctive relief plaintiffs request against the DOR is

barred by the Eleventh Amendment.  Docket No. 4 at 19, ¶ C.  The Eleventh

Amendment precludes federal jurisdiction in suits against a state or state agency either

---

[8]On March 14, 2013, plaintiffs voluntarily dismissed defendant Jackson County, Colorado from this case.  Docket No. 41.

[9]Because plaintiffs assert only the first three claims against the State defendants, this order will not discuss plaintiffs' fourth and fifth claims for relief.

for money damages or for injunctive relief. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Moreover, the Supreme Court has held that the Eleventh Amendment provides a state with absolute immunity from suit in federal court absent unmistakable waiver of Eleventh Amendment immunity by the state or an unmistakable abrogation of such immunity from Congress. *Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 58 (1996) (noting that the "Eleventh Amendment does not exist solely in order to 'preven[t] federal-court judgments that must be paid out of a State's treasury,' . . . it also serves to avoid 'the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties'") (internal citations omitted); *accord Ellis v. Univ. of Kan. Medical Center*, 163 F.3d 1186, 1196 (10th Cir. 1999). Here, it is undisputed that the DOR is a state agency. It is also undisputed that 42 U.S.C. § 1983 does not abrogate a state's Eleventh Amendment immunity. *Quern v. Jordan*, 440 U.S. 332, 345 (1979). Moreover, there is no evidence that the DOR voluntarily waived Eleventh Amendment immunity in this case. *See Steadfast Ins. Co. v. Agric. Ins. Co.*, 507 F.3d 1250, 1256 (10th Cir. 2007); *Sturdevant v. Paulsen*, 218 F.3d 1160, 1164 (10th Cir. 2000) (noting that governmental entities that function as an arm of the state qualify for Eleventh Amendment immunity). Therefore, because plaintiffs have not shown that Congress abrogated the state's sovereign immunity or that the state has voluntarily waived such immunity, the Court will dismiss without prejudice plaintiffs' claims against the DOR as barred by the Eleventh Amendment. *Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002).

### B.  Request for Injunctive Relief

Plaintiffs allege that the civil and criminal cases initiated by the State defendants violate plaintiffs' constitutional rights to due process and their rights under the takings clause.  Docket No. 4 at 12-15.  Plaintiffs request that the Court issue a prospective injunction, restraining the State defendants from using any of the information gathered from the Walden property in the ongoing state criminal and civil proceedings.[10]  Docket No. 33 at 2.  The State defendants assert that the Court should abstain from enjoining their use of any evidence in the ongoing state proceedings based on the *Younger* abstention doctrine.  Docket No. 29 at 2-3.

In *Younger v. Harris*, 401 U.S. 37 (1971)*,* the Supreme Court ruled that a district court's injunction of a pending state court criminal prosecution violated "the national policy forbidding federal courts to stay or enjoin pending state court proceedings except under special circumstances." *Id*. at 41.  *Younger* abstention dictates "that federal courts not interfere with state court proceedings by granting equitable relief – such as injunctions of important state proceedings or declaratory judgments regarding constitutional issues in those proceedings – when such relief could adequately be sought before the state court."  *Rienhardt v. Kelly*, 164 F.3d 1296, 1302 (10th Cir. 1999).  Thus, after *Younger*, even when a federal court would otherwise have jurisdiction to grant equitable relief, the court must abstain from exercising jurisdiction when a judgment on the claim would interfere with ongoing state proceedings.  *D.L. v. Unified Sch. Dist.*, 392 F.3d 1223, 1227-28 (10th Cir. 2004).

---

[10]The Court notes that plaintiffs' response does not request a prospective injunction in connection with the foreclosure proceedings.

The Supreme Court has established a threefold analysis for abstention under *Younger*.  A federal court must abstain if (1) there is an ongoing state judicial, civil, or administrative proceeding, (2) which implicates important state interests, and (3) in which there is an adequate opportunity to raise constitutional challenges.  *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431-32 (1982); *Crown Point I, LLC v. Intermountain Rural Elec. Ass'n*, 319 F.3d 1211, 1215 (10th Cir. 2003).  As noted above, *Younger* abstention is a bar not only to claims for injunctive relief, but also to claims requesting a declaratory judgment concerning the constitutionality of a state law.  *Younger*, 401 U.S. at 45 ("[t]he accused should first set up and rely u[p]on his defense in the state courts, even though this involves a challenge of the validity of some statute, unless it plainly appears that this course would not afford adequate protection"); *Rienhardt*, 164 F.3d at 1302.  Moreover, *Younger* abstention is not discretionary and, if abstention applies, a court must dismiss the claim without prejudice.  *D.L. Unified*, 392 F.3d at 1228.

Applying this analysis to the present case, it is clear that plaintiffs' request for a prospective injunction runs afoul of *Younger*.  As noted above, Mr. DeAtley is currently the subject of ongoing state criminal and civil proceedings.  *See* Docket No. 29-1; Docket No. 29-2.  The ongoing criminal and civil proceedings involve alleged violations of Colorado laws, which the State of Colorado has an obvious interest in enforcing.  *See Kelly v. Robinson*, 479 U.S. 36, 49 (1986) (noting that "the States' interest in administering their criminal justice systems free from federal interference is one of the most powerful of the considerations that should influence a court considering equitable

types of relief) (citing *Younger*, 401 U.S. at 44-45); *Fair Assessment in Real Estate Ass'n, Inc. v. McNary*, 454 U.S. 100, 116 (1981) (noting that notions of comity mandate that taxpayers "seek protection of their federal rights by state remedies, provided of course that those remedies are plain, adequate, and complete, and may ultimately seek review of the state decisions in" federal courts).  Any order enjoining the individual State defendants from testifying in those cases would interfere with ongoing state proceedings.  Moreover, plaintiffs have failed to show that they lack an adequate opportunity to raise their constitutional challenges in the state court proceedings.  *See Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987 ) ("[W]hen a litigant has not attempted to present his federal claims in related state-court proceedings, a federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary"); *accord Brown ex rel. Brown v. Day*, 555 F.3d 882, 903 (10th Cir. 2009).

Notwithstanding abstention principles, *Younger* authorizes federal courts to enjoin pending state court proceedings provided that the proceedings were (1) commenced in bad faith or to harass, (2) based on a flagrantly and patently unconstitutional statute, or (3) related to any other such extraordinary circumstances creating a threat of "irreparable injury" both great and immediate.  *Phelps v. Hamilton*, 59 F.3d 1058, 1063-64 (10th Cir. 1995).  Plaintiffs fail to meet this test.

Plaintiffs do not allege that the state criminal prosecution or the civil tax proceedings were commenced in bad faith or that the Colorado statutes at issue are flagrantly unconstitutional.  Moreover, the fact that plaintiffs will have to appear in state

court to defend against certain charges, by itself, is not sufficient to establish irreparable harm or injury. *Younger*, 401 U.S. at 46 (noting that "the cost, anxiety, and inconvenience of having to defend against a single criminal prosecution, could not . . . be considered 'irreparable' in the special legal sense of that term"); *Dolack v. Allenbrand*, 548 F.2d 891, 894 (10th Cir. 1977).  In addition, to the extent plaintiffs claim that the State defendants illegally entered their property, the Court finds that these are issues that may be rectified in the pending state criminal court proceedings. *Weitzel v. Div. of Occupational & Prof'l Licensing of Dep't of Commerce of Utah*, 240 F.3d 871, 876 (10th Cir. 2001) (noting that "*Younger* doctrine is particularly applicable" because the "pending state proceeding may rectify any constitutional violations").  Accordingly, the Court will dismiss without prejudice plaintiffs' request for prospective injunctive relief based on the *Younger* abstention principles discussed above. *See Wideman v. Colo.*, 242 F. App'x 611, 615 (10th Cir. 2007) ("[b]ecause dismissals based upon the *Rooker-Feldman* and *Younger* abstention doctrines are jurisdictional, they should be entered without prejudice").

### C.  Failure to State a Claim

The State defendants request that the Court dismiss plaintiffs' first, second, and third claims for relief alleging that defendants violated plaintiffs' Fifth and Fourth Amendment rights.  Docket No. 29 at 3-4.  Specifically, the State defendants argue that plaintiffs' amended complaint does not allege sufficient facts to state plausible constitutional violations by the individual State defendants because the complaint does not clearly state "*who* is alleged to have done *what* to *whom*, to provide each individual"

State defendant with fair notice of the claims asserted against him or her. *Id*. at 4 (citation omitted). In response, plaintiffs state that they have sufficiently alleged enough facts to raise a claim against the State defendants. Docket No. 33 at 5.

The Court's function on a Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is sufficient to plausibly state a claim. Fed. R. Civ. P. 12(b)(6); *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations omitted). In doing so, the Court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quotation marks and citation omitted).

The "plausibility" standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible. *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008). However, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal quotation marks and alteration marks omitted).

### 1. Fifth Amendment Due Process Claim

Plaintiffs' first claim for relief alleges that the State defendants "have worked in concert to deny Plaintiffs their due process rights with regard to the foreclosure process in Jackson County." Docket No. 4 at 12, ¶ 58. Plaintiffs assert that there "are serious questions of material fact regarding the loan documents that KeyBank and Jackson

County" rely upon to justify the foreclosure action.  *Id*. at 13, ¶ 60.  Plaintiffs also claim

that defendants' "concerted actions" include "limiting information or delays in providing

critical financial information, interfering with or preventing the recording of property

taxes and documents, failure to respond to Plaintiffs' concern regarding lack of

documentation on which to base a foreclosure, [and] failure by the county public trustee

to investigate" plaintiffs' concerns.  *Id*. at ¶ 62.

With respect to the conspiracy allegations, plaintiffs' complaint does not

sufficiently raise a claim of conspiracy between KeyBank and the State defendants as

there are no facts alleged that show a specific agreement or concerted action between

the defendants to violate plaintiffs' Fifth Amendment rights.  *See Sooner Prods. Co. v.*

*McBride*, 708 F.2d 510, 512 (10th Cir. 1983) ("When a plaintiff in a § 1983 action

attempts to assert the necessary 'state action' by implicating state officials or judges in

a conspiracy with private defendants, mere conclusory allegations with no supporting

factual averments are insufficient; the pleadings must specifically present facts tending

to show agreement and concerted action").  In addition, plaintiffs' averments do not

sufficiently assert a link between the alleged constitutional violation and the individual

State defendants.  *See Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163

(10th Cir. 2007) ("[T]o state a claim in federal court, a complaint must explain what each

defendant did to him or her; when the defendant did it; how the defendant's action

harmed him or her, and what specific legal right the plaintiff believes the defendant

violated").  For example, plaintiffs' complaint does not describe who participated in the

decision to prevent the recording of property taxes, who failed to respond to plaintiffs'

concern regarding a lack of documentation, or who limited the dissemination of critical

13

financial information.  Docket No. 4 at 13, ¶ 62.  Without specific factual assertions

linking the individual State defendants to the alleged unconstitutional conduct, plaintiffs'

allegations are conclusory and insufficient to demonstrate "specific facts showing an

agreement and concerted action" to violate plaintiffs' constitutional rights.  *See*

*Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 533 (10th Cir.1998) ("Conclusory

allegations of conspiracy are insufficient to state a valid § 1983 claim").  As the Tenth

Circuit recently noted, plaintiffs' "undifferentiated contention that 'defendants' infringed

[their] rights" will not suffice; rather, "it is incumbent upon . . . plaintiff[s] to 'identify

*specific* actions taken by *particular* defendants'" in order to make out a viable § 1983

claim.  *Pahls v. Thomas*, 718 F.3d 1210, 1226 (10th Cir. 2013) (emphasis in original).

Accordingly, because plaintiffs' complaint does not sufficiently allege specific actions

taken by the individual State defendants that violated plaintiffs' Fifth Amendment due

process rights, the Court will dismiss plaintiffs' first claim for relief against the State

defendants.  *Ashcroft*, 556 U.S. at 679.

### 2.   *Fifth Amendment Due Process and Takings Clause Claim*

Plaintiffs' second claim for relief alleges that all defendants "are attempting to

deprive Plaintiffs of their property rights in violation of the due process and taking

clauses of the Fifth and Fourteenth Amendments to the U.S. Constitution."  Docket No.

4 at 14, ¶ 66.  The complaint alleges that the State defendants "have knowledge that

KeyBank lacks proper documentation on which to premise the foreclosure action and

[the State defendants'] sole interest is to interfere with [the] conservation easements

granted on the purported security" claimed by KeyBank.  *Id*. at ¶ 67.  In addition,

14

plaintiffs claim that the State defendants "seek to foreclose on the subject property in an attempt to control the [Walden property] in order to improperly remove lawfully granted conservation easements." *Id*. at ¶ 68.  Finally, plaintiffs state that they "have already suffered significant harm even though the foreclosure has not yet occurred." *Id*. at ¶ 69.

The Court finds that *Younger* mandates abstention from granting plaintiffs' requested declaratory relief.  As noted above, *Younger* abstention bars claims requesting declaratory relief while state proceedings are ongoing.  *Rienhardt*, 164 F.3d at 1302.  In this regard, with respect to the first *Younger* prong, although plaintiffs do not indicate whether defendants initiated a judicial foreclosure proceeding or sought an order authorizing sale pursuant to Rule 120 of the Colorado Rules of Civil Procedure, given plaintiffs' allegation that the foreclosure sale has not yet occurred, the Court finds that state foreclosure proceedings are necessarily "ongoing" within the meaning of *Younger*.  *See* Colo. R. Civ. P. 120 (noting that, once a request for an order authorizing sale is filed, the state court will conduct a review and determine whether to issue an order authorizing sale); *see also* Colo. R. Civ. P. 105(a) (noting that, when an action is brought with respect to any real property, "[t]he court in its decree shall grant full and adequate relief so as to completely determine the controversy and enforce the rights of the parties").

With respect to the second prong, the Supreme Court has held it to be "beyond question" that ensuring the security of titles to real estate is "an essential state interest." *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 544 (1994) (rejecting interpretation of

bankruptcy code provision that would place the "title of every piece of realty purchased at foreclosure . . . under a federally created cloud").  As to the third *Younger* prong, assuming plaintiffs' property is subject to a judicial foreclosure proceeding, the state court has the authority to determine whether the State defendants or KeyBank lack adequate documentation to foreclose on the Walden property.  Docket No. 4 at 14, ¶ 67.  In the event the property is subject to Rule 120 proceedings, plaintiffs can challenge whether the State defendants have standing to foreclose on the Walden property in a Rule 120 hearing and/or plaintiffs may file a collateral attack of the Rule 120 hearing in a state court, which would have jurisdiction to consider all the issues raised in the complaint.[11]  Colo. R. Civ. P. 120(d); *see, e.g., Goodwin v. District Court In and For Sixteenth Judicial Dist.*, 779 P.2d 837, 841 (Colo. 1989) (noting that plaintiffs can collaterally attack state court orders authorizing sale).

Accordingly, because the Court must abstain from issuing a declaratory judgment regarding the ongoing foreclosure proceedings, the Court will dismiss plaintiffs' second claim for relief against the State defendants.  *See Wideman*, 242 F. App'x at 615.

---

[11]On August 5, 2013, KeyBank filed a response to plaintiffs' motion to stay proceedings [Docket No. 62].  In the response, KeyBank states that the foreclosure sale of the Walden property is currently pending and cannot be completed in light of this case.  Docket No. 62 at 3.  On August 19, 2013, plaintiffs filed a reply to their motion for a stay [Docket No. 63], in which they claim KeyBank dismissed the foreclosure sale of the Walden property.  Docket No. 63 at 3.  In light of this uncertainty with regard to the foreclosure sale, the Court finds that it is prudent to abstain from interfering with potentially ongoing state foreclosure proceedings.

### 3.   Fourth Amendment Claim

In their third claim for relief, plaintiffs request money damages for the State defendants' alleged violations of their Fourth Amendment rights.  Docket No. 33 at 2. Plaintiffs claim that, in June 2012, the State defendants, acting under color of state law, illegally entered the Walden property and removed "48 boxes of documents, 2 desktop computers, and various other property."  Docket No. 4 at 15-16, ¶¶ 72-77.  In addition, plaintiffs claim that the State defendants cut large chains and locks to enter the Walden property and removed locks from doors and commercial trailers on the Walden property.  *Id*.  Plaintiffs claim that the State defendants' illegal entry and removal of documents violates plaintiffs' Fourth Amendment rights to be free from unreasonable search and seizures.  *Id*. at 16, ¶ 79.  In response, the State defendants claim that plaintiffs' allegations are conclusory, threadbare recitals of the elements of the case, and that the allegations do not provide sufficient information against each individual defendant to state a plausible claim.  Docket No. 29 at 3-4.  The Court agrees.

"[C]omplaints in § 1983 cases against individual government actors pose a greater likelihood of failures in notice and plausibility because they typically include complex claims against multiple defendants."  *Robbins v. Okla.*, 519 F.3d 1242, 1249 (10th Cir. 2008).  Thus, in order to assert a viable § 1983 claim, a plaintiff must "make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her."  *Id*. at 1250 (emphasis in original).

In this case, plaintiffs' complaint fails to isolate the allegedly unconstitutional acts of each individual State defendant and thereby does not provide adequate notice as to the nature of the claims against each.  For example, the complaint states that a "state official, in his individual capacity and under color of law" removed documents from the Walden property in "coordination with other Defendants."  Docket No. 4 at 11, ¶ 52. This allegation is insufficient because it does not identify which specific named individual State defendant actually removed documents from the property and who were the other State defendants present at the time of such actions.  *Pahls*, 718 F.3d at 1225-26 (noting that, "[w]hen various officials have taken different actions with respect to a plaintiff . . . it is incumbent upon a plaintiff to 'identify *specific* actions taken by *particular* defendants'") (emphasis in original; citations omitted).  Moreover, although the complaint claims that state officials in their individual capacities entered the Walden property and "removed locks from doors and commercial trailers" and removed "approximately 48 boxes of documents, 2 desktop computers, and various other personal property" the complaint does not allege which one of the named State defendants allegedly took these actions.  Docket No. 4 at 15, ¶¶ 74, 76.  In fact, plaintiffs admit that "[w]hat is missing is the name of the state actor(s) and who directed the illegal operation."  Docket No. 33 at 5.

Without factual allegations with respect to the named individual State defendants, plaintiffs' complaint fails to provide each defendant sufficient notice of "*who* is alleged to have done *what* to *whom*."  *Robbins*, 519 F.3d at 1249-50 (emphasis in original).  Although it is possible that the complaint's reference to "state officials" refers to the individually named defendants in this case, the Court – and the individual

18

defendants – are not required to speculate about the nature of the claims asserted as "the burden rests on the plaintiffs to provide fair notice of the grounds for the claims made against each of the defendants." *Id*. Given the complaint's use of the collective term "state officials" and "Defendants" with no distinction as to what acts are attributable to whom, it is impossible for any of the individual defendants to ascertain what particular unconstitutional act they are alleged to have committed (i.e., breaking the locks, removing documents, deflating tires on equipment, etc.). *Brown v. Montoya*, 662 F.3d 1152, 1165 (10th Cir. 2011). In the absence of specific allegations against each individual State defendant, the Court finds that plaintiffs' averments have not nudged this claim, as applied to the individual State defendants, across the line from conceivable to plausible. *Id*. Accordingly, the Court will dismiss plaintiffs' Fourth Amendment claim against the State defendants for failure to state a claim. *Robbins*, 519 F.3d at 1249-50.

### D.   Motion to Dismiss for Improper Venue

On October 4, 2012, KeyBank filed a motion to dismiss this case for improper venue or, in the alternative, to have the district court for the Western District of Washington transfer the case to this District. Docket No. 7. On November 13, 2012, the District Court for the Western District of Washington transferred the case to this Court. Given that the case has been transferred to this District, the Court will dismiss KeyBank's motion as moot.

III.   **CONCLUSION**

Based on the foregoing, the Court finds that it is appropriate to dismiss without

prejudice plaintiffs' claims against the DOR and the individual state defendants in their

official capacities as barred by the Eleventh Amendment.   In addition, the Court finds

that plaintiffs' first, second, and third claims for relief against the individual State

defendants in their individual capacities are appropriately dismissed for failure to state a

claim.

Therefore, it is

**ORDERED** that KeyBank National Association's Motion to Dismiss [Docket No.

7] is **DENIED** as **moot**.  It is further

**ORDERED** that the State defendants' Motions to Dismiss [Docket Nos. 8, 29] are

**GRANTED**.  It is further

**ORDERED** that plaintiffs' First and Second claims for relief against defendants

the Colorado Department of Revenue, Roxy Huber, Neil Tillquest, Bruce Nelson, and

Richard Giardini are dismissed without prejudice.  It is further

**ORDERED** that plaintiffs' Third claim for relief against defendants the Colorado

Department of Revenue, Roxy Huber, Neil Tillquest, Bruce Nelson, and Richard

Giardini is dismissed for failure to state a claim.  It is further

**ORDERED** that the Colorado Department of Revenue, Roxy Huber, Neil

Tillquest, Bruce Nelson, and Richard Giardini are dismissed as defendants from this

case.

DATED August 23, 2013.

BY THE COURT:


 s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge