IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 12-cv-02973-PAB-BNB

ALAN DEATLY,
NAPI (Colorado) LLC, a Washington limited liability company, and
15 CORPORATIONS, INC., a Washington limited liability company,

Plaintiffs,

v.

KEYBANK NATIONAL ASSOCIATION, an Ohio corporation,

Defendant.

_____

**ORDER**
_____

This matter arises on the following:

(1) **Keybank Motion for Sanctions for Failure to Appear at a Deposition** [Doc. # 52, filed 6/21/2013] (the "Motion to Compel"); and

(2) **Plaintiff DeAtley's Motion for Stay** [Doc. # 59, filed 7/12/2013] (the "Motion to Stay").

The Motion to Stay [Doc. # 59] is DENIED, and the Motion to Compel [Doc. # 52] is GRANTED.

Two claims remain pending following the Order [Doc. # 65] of the district judge: plaintiffs' Fourth Claim, against Keybank, alleging breach of contract in connection with Keybank's loan modification documents; and plaintiffs' Fifth Claim, against Keybank, alleging fraud in connection with an unsecured loan. Order [Doc. # 65] at pp. 5-6. In this case, the plaintiffs are represented by counsel. In a separate matter pending in this court--DeAtley v.

Stuart, 13-cv-01140-REB-BNB--Mr. DeAtley proceeds pro se in an action alleging malpractice against lawyers hired to represent him in a related criminal proceeding. Scheduling Order [Doc. # 23 (13-cv-01140)] at Part 3.

Keybank noticed the deposition of Mr. DeAtley to occur on June 7, 2013. At the request of Mr. DeAtley's attorney, and based on the representation that Mr. DeAtley was undergoing "a medical procedure performed on the same day," Keybank cancelled the deposition. In fact, Mr. DeAtley underwent a consultation, not a medical procedure, on June 6, 2013. Although a medical procedure was scheduled to occur on June 24, 2013, Mr. DeAtley's counsel stated in his Response, filed on July 12, 2013, that Mr. DeAtley's "condition is unresolved and now impaired due to his total lack of financial resources." Response [Doc. # 56] at ¶3. Apparently, at least as of July 12, Mr. DeAtley had not undergone the anticipated procedure.[1] In addition, Mr. DeAtley appeared, *pro se* and by telephone, for a scheduling conference in 13-cv-01140 on July 23, 2013, during which no mention was made of his health condition or of any medical procedures recently undergone or pending.

Keybank is entitled to take discovery in this case, including the deposition of Mr. DeAtley, in order to prepare its defense. The testimony of Mr. DeAtley certainly will be

---

[1] I was provided, under restriction, with a medical record from a Dr. Tanwani indicating that Mr. DeAtley's medical condition is "off-and-on difficulty swallowing" that is "very intermittent." The anticipated procedure is described as an "EDG," which I assume to be an esophagogastroduodenoscopy.

By raising his medical condition as a basis for cancelling his deposition, Mr. DeAtley has waived any right to privacy on that matter. Consequently, there is no basis to restrict access to the medical record. In addition, no motion to restrict access to the medical record was filed, see D.C.COLO.LCivR 7.2D, and more than 14 days has expired since its filing. The medical record [Doc # 57] shall be unrestricted and open to public inspection.

relevant to matters in dispute and may lead to the discovery of admissible evidence. There is no evidence of undue burden in requiring Mr. DeAtley to appear for his deposition in Denver, where the action is pending.

Independently of his asserted health issues, Mr. DeAtley requests a stay of the action "against him, pending resolution of related allegations in both (1) a prior criminal case against him in Denver County District Court and (2) a prior civil action in the Jackson County District Court." Motion for Stay [Doc. # 59] at p. 1. Mr. DeAtley, claiming to be "mindful of [his] Fifth Amendment rights," argues that "there is no practical way to move forward on any of the civil cases [including this one] . . . while the criminal case is pending." Id. at p. 2.

The chronology of events is important. Keybank argues, without dispute by Mr. DeAtley, that a Denver grand jury returned an indictment against Mr. DeAtley on October 6, 2010. Indictment [Doc. # 24-1 (13-cv-01140)]. Nearly two years later, and without regard for the pending criminal charges, Mr. DeAtley commenced this action against Keybank on July 3, 2012, after Keybank commenced a foreclosure action concerning Mr. DeAtley's real property in Jackson County, Colorado. Verified Motion for Order Authorizing Sale [Doc. # 24-13 (13-cv-01140)]. The present action proceeded without objection by Mr. DeAtley through the pleading stage, a scheduling conference, and into discovery. Mr. DeAtley agreed to sit for his deposition on June 3, 2013, and cancelled that deposition based solely on asserted health issues. He did not seek to stay this case until faced with the Motion to Compel [Doc. # 52].

Meanwhile, there have been proceedings in the Colorado state courts in connection with the indictment. On July 30, 2011, Mr. DeAtley engaged Martin Stuart as defense counsel. Complaint [Doc. # 3 (13-cv-01140)] at p. 1; Fee Agreement [Doc. # 42-2 (13-cv-01140)]. On

October 31, 2012, Mr. DeAtley wrote directly to the state trial judge complaining about the representation provided by Mr. Stuart. Letter [Doc. # 42-3 (13-cv-01140)]. Mr. Stuart was made aware of the letter and moved to withdraw. Motion to Withdraw [Doc. # 42-2 (13-cv-01140)]. That motion to withdraw resulted in the following:

> [T]he District Attorney filed an opposition to the Motion to Withdraw. The District Attorney's Opposition argued that withdrawal of Defense Counsel was not in the best interest of judicial economy or efficiency, and it had been filed as a delay tactic to avoid proceeding to trial.
> \* \* \*
> At the conclusion of the December 3, 2012 proceedings the Court denied Defense Counsel's Motion to Withdraw until new counsel entered an appearance on Defendant's behalf. Defendant waived his right to a speedy trial and the Court continued the trial date to allow Defendant to retain new counsel. The Court stated however, it was, "likely that it would find that there is a conflict of interest at this point that would preclude presentation of an adequate defense. . . ."
> \* \* \*
> On January 16, 2013, the Court entered an Order captioned "Clarification Regarding Withdrawal" ("January 16th Order"). The January 16the Order states:
>
> "The Court deferred ruling on the request to withdraw, but held that withdrawal will be permitted if, and only if, the Defendant is able to secure a new attorney who can be prepared to try the case before June of this year [2013] or if the Defendant elects to represent himself. If this does not occur, the Defendant's present counsel will have to represent the Defendant at trial."
> \* \* \*
> A hearing was held on January 17, 2013. . . . Mr. DeAtley explained that he had meetings scheduled with two attorneys to discuss taking over his representation. . . .
>
> On January 31, 2013, the parties appeared before the Court for a status hearing at which time Defendant was to have new counsel enter an appearance. However, Defendant stated to the Court that he had contacted over thirty (30) attorneys all of whom had a conflict or were concerned about the trial deadline. . . .

> At the January 31, 2013 hearing, Defendant handed Defense Counsel a complaint captioned <u>Alan DeAtley v. Martin Stuart and Jolie Masterson</u>, 13-cv-3014-EFS, in the United States District Court for the Eastern District of Washington ("Legal Malpractice Complaint"). The Legal Malpractice Complaint was ultimately filed in the Eastern District of Washington on February 12, 2013.
> 
> \* \* \*
> 
> On February 15, 2013, . . . Defendant again asserted that all of the attorneys he contacted to represent him were concerned about their ability to prepare for the trial within the Court's time frame.
> 
> . . . Defense Counsel stated that they were not aware of any substantial attempts by Defendant to obtain an attorney and that only one other attorney had contacted them on behalf of Defendant regarding taking over representation.
> 
> \* \* \*
> 
> The Court then again addressed Defense Counsel's Motion to Withdraw. The Court admitted that a conflict existed, but denied the motion, stating:
> 
> "As I've indicated there is a conflict and we have discussed that and some of that's off the record, was *ex parte* given the nature of the request to withdraw and I'm not going to go into the conflict beyond that prior record because of that. But it is a conflict that certainly is being imposed by Mr. DeAtley. I'm not saying created by Mr. DeAtley but it is imposed through his actions particularly in addition to the prior record the fact that there is an action that has been filed against his counsel."
> 
> \* \* \*
> 
> The Court provided three options to Defendant: (1) accept representation of current Defense Counsel; (2) proceed *pro se*; or (3) retain new counsel with the understanding that he/she may request an extension of the trial date but that such request will more likely be denied. Defendant chose the third option.

Motion for Reconsideration of Defense Counsels' Motion to Withdraw [Doc. # 42-5 (13-cv-01140)] at pp. 2-6 (internal citations omitted). The malpractice action filed in the Eastern District of Washington later was transferred to this court and is 13-cv-01140.

No new counsel entered its appearance, and on April 9, 2013, Mr. Stuart filed a Petition

5

in the Colorado Supreme Court (the "Petition") seeking extraordinary relief.[2]  The Petition is pending.

The cases cited by Mr. DeAtley in support of his Motion to Stay all concern stays requested by parties who are targets or defendants in criminal proceedings and defendants in related civil proceedings.  That is not the case here.

It is apparent to me that Mr. DeAtley is engaged in abusive litigation tactics for the improper purpose of manipulating the judicial system to delay both Keybank's attempts to pursue its foreclosure action and the state criminal prosecution.  Mr. DeAtley has refused to engage substitute defense counsel in the state criminal prosecution, bringing that action to a stop.  In the meantime, he commenced this action alleging misconduct by Keybank, which resulted in Keybank's withdrawal of its foreclosure action.  Now Mr. DeAtley seeks to postpone indefinitely this action until resolution of the criminal case, progress of which he has stymied.  I do not intend to facilitate Mr. DeAtley's improper manipulation of the judicial system.

Under analogous facts, the Fifth Circuit Court of Appeals ruled in <u>Wehling v. Columbia Broadcasting System</u>, 608 F.2d 1084, 1088 (5th Cir. 1979):

> We recognize, of course, that Wehling [plaintiff in the civil action, defendant in a criminal matter] is not the only party to this action who has important rights that must be respected.  As we have observed, CBS should not be required to defend against a party who refuses to reveal the very information which might absolve defendant of all liability.  "While it may be true that an individual should suffer no penalty for the assertion of a constitutional right, neither should third parties sued by that individual who have no apparent interest in the criminal prosecution, be placed at a

---

[2]The Petition requests that the Supreme Court "enter an Order to Show Cause against . . . Judge John W. Madden IV, why Defense Counsel should not be permitted to withdraw as counsel for DeAtley in the Underlying Action."  Petition [Doc. # 42-6 (13-cv-01140)] at p. 31.

> disadvantage thereby." Therefore we emphasize that a civil plaintiff has no absolute right to both his silence and his lawsuit.

(Quoting Jones to B.C. Christopher & Co., 466 F. Supp. 213, 227 (D. Kan. 1979).)

The court in Wehling disapproved the dismissal of the plaintiff's civil claims as a sanction for invoking his Fifth Amendment right against self incrimination, Wehling, 608 F.2d at 1087,[3] suggesting instead that a stay of the civil action should have been granted. Id. at 1089. There was no suggestion or finding there, however, as there is here, that Wehling was attempting to improperly manipulate the judicial system.

In Mid-America's Process Service v. Ellison, 767 F.2d 684 (10th Cir. 1985), our circuit court refused mandamus review of a trial court's order refusing to stay civil discovery until after the resolution of a criminal investigation against the petitioners.[4] Instead, the circuit court ruled that "the law does not require postponement of civil discovery until fear of criminal prosecution is gone. The propriety of postponement is a matter for the exercise of the trial court's discretion." Id. at 687. In addition, the court noted:

> The individual petitioners unquestionably may assert a Fifth Amendment privilege in this civil case and refuse to reveal information properly subject to the privilege, in which event they may have to accept certain bad consequences that flow from that action. Appellate review of the civil judgment could correct any impermissible consequences if petitioners' silence is improperly used to obtain the civil judgment.
>
> In deciding whether to testify petitioners act at their peril in

---

[3] Similarly, in Mid-America's Process Service v. Ellison, 767 F.2d 684, 685 (10th Cir. 1985), the Tenth Circuit Court of Appeals stated that "[u]sing threats of serious economic reprisal to compel a person to waive the Fifth Amendment and testify is unconstitutional."

[4] Importantly, the petitioners in Mid-America's were defendants in the civil action, not plaintiffs as Mr. DeAtley is here.

>     assessing whether the alleged coercion here is the type of threat of
>     serious economic reprisal that is unconstitutional. . . . Because
>     they can obtain meaningful appellate review at a later stage, we
>     should not here render an advisory opinion, under the guise of
>     mandamus, on whether their privilege has been adequately
>     protected.

Id. at 686 (internal citations omitted).[5]

This case bears similarities to Federal Trade Comm. v. Parade of Toys, Inc., 1997 WL 688752 (D. Kan. Oct. 15, 1997). There, the district court refused to stay civil discovery despite a pending parallel criminal investigation, finding:

>     The public interest in prosecuting the civil action outweighs
>     Boukhout's [the witness/target] interest in avoiding the dilemma of
>     invoking his Fifth Amendment privilege. The FTC is seeking an
>     injunction to prevent defendants from deceptively offering and
>     selling purportedly profitable business ventures to the public. The
>     enforcement of consumer protection laws and the prevention of
>     fraud substantially invoke the public interest. Conversely,
>     Bouckhout may assert his Fifth Amendment privilege in the civil
>     suit without totally disabling the defense of that suit.

Id. at *2. Similarly in this case the public interest in preventing Mr. DeAtley from manipulating the judicial system to delay both Keybank's attempts to pursue its foreclosure action and the state criminal prosecution outweigh the potential difficulties which may result from his assertion in this civil action, which he commenced, of his Fifth Amendment right.

IT IS ORDERED:

(1) The medical record [Doc. # 57] shall not be restricted and shall be open to public

---

[5]Keybank has not suggested that it would use Mr. DeAtley's assertion of his Fifth Amendment right as a basis to dismiss this action. If Mr. DeAtley asserts his right and refuses to give civil discovery, there are other remedies short of dismissal which might cure any resulting prejudice to Keybank, including precluding Mr. DeAtley from testifying at the trial of the civil case or allowing the jury to draw an adverse inference from his assertion of that right. See Baxter v. Palmigiano, 425 U.S. 308, 318 (1976).

8

inspection.

      (2)      The Motion to Stay [Doc. # 59] is DENIED.

      (3)      The Motion to Compel [Doc. # 52] is GRANTED.  Mr. DeAtley must appear for his deposition at a date and time as the parties may agree.

      (4)      A status conference to address any modifications to the case schedule which may be necessary is set for **November 8, 2013, at 8:30 a.m.**, in Courtroom 401, 4th floor, Alfred A. Arraj United States Courthouse, 901 19th Street, Denver, Colorado.  Counsel shall be prepared to discuss the date of Mr. DeAtley's deposition at that conference.  If they are able to agree, I may make their agreement an order of the court.  Otherwise, I will set the date of the deposition in my discretion.

Dated October 28, 2013.

BY THE COURT:

s/ Boyd N. Boland
United States Magistrate Judge